UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IN RE: | CASE NO. | 10-31517 (JAM) |
| LOUIS GHERLONE EXCAVATING, INC. | CHAPTER | 7 |
| DEBTOR. | | |
| RICHARD M. COAN, TRUSTEE | ECF No. | 1 |
| PLAINTIFF | | |
| vs. | ADV. PRO. NO. | 12-03073 |
| MDC CORPORATION AND LEO D. CALDARELLA | | |
| DEFENDANTS. | | |

## APPEARANCES

Timothy D. Miltenberger, Esq.       Attorney for the Plaintiff
Coan Lewendon Gulliver & Miltenberger
495 Orange Street
New Haven, CT 06511

Mark Shipman, Esq.       Attorneys for the Defendant
Charles Scott Schwefel, Esq.
Shipman Stokesbury & Fingold LLC
20 Batterson Park Road, Suite 120
Farmington, CT 06032

## MEMORANDUM OF DECISION ON COMPLAINT TO AVOID AND RECOVER UNAUTHORIZED POSTPETITION TRANSFERS

Julie A. Manning, Chief United States Bankruptcy Judge

**I.**    **Introduction**

The Plaintiff in this adversary proceeding is the Chapter 7 Trustee ("Plaintiff" or "Trustee"), of the Louis Gherlone Excavating, Inc., ("LGE"), bankruptcy case. At issue are

several transfers allegedly made by LGE and/or Mr. Louis Gherlone ("Gherlone"), LGE's owner and principal, to or for the benefit of the Defendants, MDC Corporation ("MDC"), and its principal, Mr. Leo D. Caldarella ("Caldarella"). The Chapter 7 Trustee seeks a declaration that the transfers are avoidable as unauthorized postpetition transfers under 11 U.S.C. § 549 and seeks recovery of the transfers under 11 U.S.C. § 550.[1] A trial was held in this matter on April 24, 2014 and May 12, 2014.

## II. Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. §1334(b). The Bankruptcy Court derives its authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A) and (b)(2)(O).

The decisions of the United States Supreme Court in *Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), and *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014), have cast doubt on the Constitutional authority of the bankruptcy court to enter a final judgment in some statutorily "core" proceedings. However, the Court concludes that this action to avoid and recover alleged unauthorized postpetition transfers lies outside the scope of *Stern* and *Executive Benefits* and does not implicate the Constitutional concerns addressed in those cases. As the United States Bankruptcy Court for the District of Massachusetts observed in *Murphy v. Felice (In re Felice)*, 480 B.R. 401, 428 (Bankr. D. Mass. 2012):

> An action . . . to recover an unauthorized postpetition transfer of property of the estate 'stems from the bankruptcy itself' . . . . [Additionally, u]nlike the counterclaim in *Stern*, the recovery of an unauthorized post-petition [sic] transfer will not 'augment the estate.' . . . In this respect § 549 actions differ from actions

---

[1] The Defendants assert fourteen (14) affirmative defenses to the Plaintiff's allegations. The majority of the affirmative defenses asserted are not proper defenses to an unauthorized postpetition transfer action.

to recover fraudulent conveyances, which, by definition, do not involve assets that were property of the estate on the petition date.

(quoting *Stern v. Marshall*, 131 S. Ct. at 2618). Thus, both the statutory and Constitutional authority for this Court to enter a final judgment exists in this case.

### III.  Findings of Fact and Conclusions of Law

Pursuant to Fed. R. Civ. P. 52, made applicable to this matter by Fed. R. Bankr. P. 7052, the following are the Court's findings of fact and conclusions of law:

#### A.  Findings of Fact

#### Background

1. On May 20, 2010, LGE filed a voluntary Chapter 11 bankruptcy case in this Court entitled In re Louis Gherlone Excavating, Inc., Case No. 10-31517 (the "LGE bankruptcy"). (Plaintiff's Exhibit A).

2. In connection with its Chapter 11 case, LGE opened a debtor-in-possession bank account (the "LGE DIP account"). The LGE DIP account was used to facilitate LGE's operations as a Chapter 11 debtor-in-possession. (Plaintiff's Exhibit D; Testimony of Gherlone at April 24, 2014 trial).

3. While LGE was a Chapter 11 debtor-in-possession, several orders authorizing the interim use of cash collateral were entered in the case. (Plaintiff's Exhibit A).

4. On August 23, 2010, the final interim order authorizing the use of cash collateral was entered in the case. The final interim cash collateral order expired, according to its terms, on September 6, 2010. (Plaintiff's Exhibit A; Testimony of Gherlone at April 24, 2014 trial).

5. At all times relevant to the allegations in the Complaint,[2] MDC was a corporation with offices in Old Saybrook, Connecticut. (Complaint at p. 2; Testimony of Caldarella at May 12, 2014 trial).

6. Caldarella was a resident of Connecticut and the owner and principal officer of MDC. (Complaint at p. 2; Testimony of Caldarella at May 12, 2014).

### The Alleged Unauthorized Postpetition Transfers

7. On or around September 21, 2010, TVJL Management Co. ("TVJL"), a third-party entity, issued a check in the amount of $62,500.00 to MDC (the "$62,500.00 check"). (Plaintiff's Exhibit I; Testimony of Gherlone at April 24, 2014 trial; Testimony of Caldarella at May 12, 2014 trial). The Plaintiff asserts that the $62,500.00 check is an account receivable of LGE and therefore is property of LGE's bankruptcy estate. The Plaintiff further asserts that the $62,500.00 check is an unauthorized postpetition transfer of property of LGE's bankruptcy estate.

8. On or around September 23, 2010, a check in the amount of $30,000.00 was issued to MDC from the LGE DIP account (the "$30,000.00 check"). (Plaintiff's Exhibit D; Testimony of Gherlone at April 24, 2014 trial). The Plaintiff asserts that the $30,000.00 check was an unauthorized postpetition transfer of property of LGE's bankruptcy estate.

9. On or around October 7, 2010, A. Prete Construction Co., Inc. ("Prete"), a third-party entity, issued a check in the amount of $111,108.37 to MDC (the "$111,108.37 check"). (Plaintiff's Exhibit G; Testimony of Gherlone at April 24, 2014 trial; Testimony of Caldarella at May 12, 2014 trial). The Plaintiff asserts that the $111,108.37 check is an account receivable of LGE and therefore is property of LGE's bankruptcy estate. The Plaintiff further

---

[2] All references to the "Complaint" herein are to the complaint dated September 19, 2012.

4

asserts that the $111,108.37 check is an unauthorized postpetition transfer of property of LGE's bankruptcy estate.

10. On or around November 24, 2010, a check in the amount of $50,000.00 (the "$50,000.00 check") was issued to MDC from the LGE DIP Account. (Plaintiff's Exhibit E; Testimony of Gherlone at April 24, 2014 trial). The Plaintiff asserts that the $50,000.00 check was an unauthorized postpetition transfer of property of LGE's bankruptcy estate.

### Circumstances Surrounding The Alleged Unauthorized Postpetition Transfers

#### i. The $62,500.00 check and the $111,108.37 check

11. The $62,500.00 check was issued in connection with work done on a particular demolition job, referred to in testimony as "Gloria's." (Plaintiff's Exhibit I; Testimony of Gherlone at April 24, 2014 trial; Testimony of Caldarella at May 12, 2014 trial).

12. The $111,108.37 check was issued in connection with work done on a particular construction job, referred to in testimony as "Saint Francis." (Plaintiff's Exhibit G; Testimony of Gherlone at April 24, 2014 trial; Testimony of Caldarella at May 12, 2014 trial).

13. No evidence was presented at trial to establish that the funds transferred to MDC by the $62,500.00 and $111,108.37 checks were ever property of the LGE bankruptcy estate. (Plaintiff's Exhibit G; Plaintiff's Exhibit I; Testimony of Gherlone at April 24, 2014 trial; Testimony of Caldarella at May 12, 2014 trial).

#### ii. The $30,000.00 check and the $50,000.00 check

14. At trial, Gherlone testified about LGE construction projects for which the $30,000.00 check *may* have been issued, specifically mentioning two jobs referred to as the "Center for Child Development" job and the "Pepperidge Farm" job. (Plaintiff's Exhibit D; Testimony of Gherlone at April 24, 2014 trial). However, Gherlone ultimately testified at trial

that without the benefit of invoices to refer to, he did not know with any certainty to which job the $30,000.00 check applied. (Testimony of Gherlone at April 24, 2014 trial).

15. Gherlone further testified that two invoices – apparently generated in connection with the $30,000.00 check, but not offered into evidence by any party – had been "fabricated." (Testimony of Gherlone at April 24, 2014 trial).

16. Caldarella denied that either he or MDC fabricated any invoices. He further testified that he could not specifically recall to which job the $30,000.00 check was related. (Plaintiff's Exhibit D; Testimony of Gherlone at April 24, 2014 trial; Testimony of Caldarella at May 12, 2014 trial).

17. Gherlone testified at trial that he "guessed" that the $50,000.00 check was issued in connection with the Pepperidge Farm job but that, ultimately, he did "not know" why the $50,000.00 check was issued. (Testimony of Gherlone at April 24, 2014 trial).

18. Caldarella again denied that either he or MDC fabricated any invoices. (Testimony of Caldarella at May 12, 2014 trial). Caldarella further testified that the $50,000.00 check was issued to MDC by LGE, at the insistence of NewAlliance Bank, a secured creditor in the LGE bankruptcy case which was involved in the Pepperidge Farm job. (Plaintiff's Exhibit E; Testimony of Caldarella at May 12, 2014 trial).

19. Caldarella testified that the $50,000.00 check was issued to MDC so that Caldarella would exert his "influence" over LGE to ensure that LGE's "punch list" on the Pepperidge Farm job was completed. (Plaintiff's Exhibit E; Testimony of Caldarella at May 12, 2014 trial). In the absence of evidence substantiating Gherlone's vague assertions regarding the $50,000.00 check, the Court finds that the check was issued under the circumstances and for the reasons testified to by Caldarella.

### Conversion of the LGE bankruptcy from Chapter 11 to Chapter 7

20. On February 16, 2011, the LGE Chapter 11 case was converted to a Chapter 7 case and the Plaintiff was appointed to serve as the Trustee. (Plaintiff's Exhibit A; Complaint at p. 2; Testimony of the Plaintiff at April 24, 2014 trial).

21. In or around March of 2011, a meeting of creditors was held in the Chapter 7 LGE bankruptcy case. At that meeting, Gherlone testified that Caldarella was in possession of $95,000.00 that belonged to LGE's bankruptcy estate. (Testimony of the Plaintiff at April 24, 2014 trial).

22. Subsequent to the meeting of creditors, Gherlone advised the Plaintiff that $80,000.00 of money from the Pepperidge Farm job was diverted to MDC. Gherlone further advised the Plaintiff that the $62,500.00 and $111,108.37 checks were issued to MDC when they should not have been. Gherlone said that he had allowed the transfers to MDC to occur in order to enable Caldarella to purchase equipment and start a new venture. Gherlone further stated that he did so in the hopes of later being hired to join the new venture to be formed by Caldarella. (Testimony of the Plaintiff at April 24, 2014 trial).

23. In or around March of 2011, nearly all of LGE's business records were destroyed in a fire, including all records and invoices for goods and/or services rendered by LGE during the period of time involving the alleged unauthorized postpetition transfers. (Testimony of the Plaintiff at April 24, 2014 trial; Testimony of Gherlone at April 24, 2014 trial).

**B.    Conclusions of Law**

Section 549 provides that a trustee may avoid a transfer of property of the estate that occurs after the commencement of the case and that is unauthorized. *Bean v. Agard (In re Bean)*, 252 F.3d 113, 117 (2d Cir. 2001). A trustee may avoid a postpetition transfer of property if the

7

trustee proves the following elements: (1) the transfer involved property of the estate; (2) the transfer occurred after commencement of the case; and (3) the transfer was not authorized by the Court or any provision of the Bankruptcy Code. *In re Countryside Manor, Inc.*, 239 B.R. 443, 446 (Bankr. D. Conn. 1999) ("... the elements of an avoidance action under § 549 [are] that there was an unauthorized postpetition transfer of property of the estate."); *see also, Collins v. Decker (In re Decker)*, No. 06-60886, 2011 WL 2174349 at * 5 (Bankr. N.D.N.Y. June 1, 2011) (laying out this three-element analysis under Section 549).³

As the party seeking to set aside the postpetition transfers, the Trustee bears the initial burden of proof by a preponderance of the evidence. *Musso v. Brooklyn Navy Yard Dev. Corp. (In re Westchester Tank Fabricators, Ltd.)*, 207 B.R. 391, 396, 403 (Bankr. E.D.N.Y. 1997). Once the Trustee makes this initial showing, the burden then shifts to the entity asserting the validity of the transfer to prove the validity of the transfer by a preponderance of the evidence. Fed. R. Bankr. P. 6001; *Countryside Manor*, 239 B.R. at 446.

### 1. **Defendant Caldarella**

At trial, the Plaintiff did not present any evidence that any of the checks were made payable to Caldarella or that Caldarella personally received any of the proceeds of the any of the checks. Thus, the Plaintiff did not meet the burden of proof as to the claims asserted against Caldarella and therefore the Section 549 claim against Caldarella cannot be sustained.

Because a Section 549 claim cannot be sustained agains Caldarella, the Section 550 claim for recovery against Caldarella also cannot survive. Therefore, judgment will enter in favor of Caldarella and against the Plaintiff on Counts One and Three of the Complaint.

---

³ *See also, In re Delco Oil, Inc.*, 599 F.3d 1255, 1258 (11th Cir. 2010) (providing that "[t]o avoid a transfer under Section 549(a) a trustee need only demonstrate: (1) a post-petition [sic] transfer (2) of estate property (3) which was not authorized by the Bankruptcy Code or the court.").

### 2. Defendant MDC

#### Transfers Occurring After Commencement of the Case

The evidence clearly establishes that all of the transfers at issue occurred after the filing of the LGE bankruptcy case. As such, the first element of a Section 549 action against MDC has been satisfied as to all of the transfers.

#### Property of the Estate

Under Section 549, an alleged unauthorized postpetition transfer must be "property of the estate." 11 U.S.C. § 549; *In re Bean*, 252 F.3d at 116; *In re Westchester Tank Fabricators, Ltd.*, 207 B.R. at 397. The Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 252 F.3d at 116 (quoting 11 U.S.C. § 541(a)(1)). All of the transfers at issue must, therefore, next be examined to determine whether they were transfers of "property of the estate."

#### Third Party Transfers—the $65,000.00 and $111,108.37 checks

The Plaintiff asserts that the $62,500.00 and 111,108.37 checks were accounts receivable owed to LGE for equipment and services provided at two demolition and construction projects and were improperly paid to MDC. The Plaintiff urges the Court to conclude that the $62,500.00 and $111,108.37 checks were therefore property of the LGE bankruptcy estate whose unauthorized transfer to MDC is avoidable under Section 549.

"'Property of the estate' is defined by the Bankruptcy Code as 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re Westchester Tank Fabricators, Ltd.*, 207 B.R. at 397 (quoting 11 U.S.C. § 541(a)(1)) (emphasis omitted). The Bankruptcy Court for the Southern District of New York has previously noted that an "account[]

9

receivable is . . . a right to receive money." *O'Neil v. U.S. Dep't of Internal Revenue (In re O'Neil)*, 177 B.R. 809, 814 (Bankr. S.D.N.Y. 1995). *Black's Law Dictionary* 19 (9th ed. 2009), further defines "accounts receivable" as "[a]n account reflecting a balance owed by a debtor; a debt owed by a customer to an enterprise for goods or services."

The testimony of Gherlone and Caldarella was significantly at odds with regard to the $62,500.00 and $111,108.37 checks. Gherlone testified that the $62,500.00 and $111,108.37 checks should have been issued to LGE and not to MDC because LGE had provided equipment and performed the work on the Gloria's and Saint Francis jobs. However, Gherlone further testified that he did not object when the $62,500.00 and the $111,108.37 checks were issued to MDC, even though he knew that MDC had not performed any services for which it should have been paid. Gherlone also testified that he did not know whether and to what extent the work performed by LGE was invoiced to MDC, and he did not produce any invoices issued to MDC at trial.

Caldarella testified that the $62,500.00 and $111,108.37 checks were payments for work performed on specific contracts between MDC and TVJL, and MDC and Prete, for the Gloria's and Saint Francis jobs. Although Caldarella conceded that LGE equipment and personnel were present and performed some work on the Gloria's and Saint Francis jobs, he testified that neither he nor MDC requested LGE to be present or participate on the jobs. Caldarella also testified that MDC was never invoiced for any work that LGE performed.

Gherlone's testimony is not persuasive for several reasons. Gherlone testified that he was not aware of or familiar with the financial affairs of LGE, yet he owned and operated the company for several decades. Also, no corroboration of Gherlone's testimony was presented at trial. For example, no documents were introduced to support the claim that LGE equipment and

services were used at the Gloria's and Saint Francis jobs, and no evidence was introduced to show the value of that work allegedly performed by LGE.

The Trustee testified that he believed Gherlone's assertions that LGE performed the work on the Gloria's and Saint Francis jobs and was entitled to those payments. However, no evidence beyond Gherlone's version of events was introduced to support such a conclusion. The Trustee conceded that several aspects of Gherlone's testimony appeared contradictory and unreliable. In contrast, Caldarella's version of events is corroborated by the fact that the $62,500.00 and $111,108.37 checks were issued directly to MDC. Caldarella's testimony is therefore the more credible and persuasive. There was also no evidence presented to establish that either the $62,500.00 or $111,108.37 checks were property of the LGE bankruptcy estate. The Plaintiff argued that these checks correspond to amounts owed on accounts receivable of LGE, but failed to sufficiently prove that allegation. Evidence was presented to support the claim that LGE employees and LGE equipment were present at the Gloria's and Saint Francis worksites and may have performed some of the work on those jobs. However, that evidence alone is not sufficient to establish LGE's entitlement to the $62,500.00 and $111,108.37 checks, or to prove by a preponderance of the evidence that those checks were property of the LGE bankruptcy estate. In the absence of such additional evidence, a Section 549 claim cannot be sustained as to the $62,500.00 and $111,108.37 checks.

### Transfers from LGE DIP Account—the $30,000.00 and $50,000.00 checks

The $30,000.00 and $50,000.00 checks were issued from the LGE DIP account. The LGE DIP account was opened postpetition and was used by LGE to facilitate its operations as a Chapter 11 debtor-in-possession. LGE held legal and equitable interests in the LGE DIP account and its status as property of the LGE bankruptcy estate is clear. The evidence further established

that both checks were negotiated by MDC. Therefore, the $30,000.00 and $50,000.00 checks were transferred out of the LGE bankruptcy estate and into MDC's possession and control.

### Unauthorized by the Court or Bankruptcy Code

There is sufficient evidence that the $30,000.00 and $50,000.00 checks were property of the LGE bankruptcy estate. Furthermore, the evidence presented established by a preponderance of the evidence that the $30,000.00 and $50,000.00 checks were not payments authorized by the Court or the Bankruptcy Code and occurred after the expiration of the final cash collateral order.

MDC offered no basis for finding that the $30,000.00 and $50,000.00 checks were authorized by any order of the Court or the Bankruptcy Code. Gherlone testified that the $30,000.00 check was based on "fabricated" invoices and that MDC had done no work to justify receiving either of the two checks. The Trustee testified that Caldarella had informed him that, at least as to the $50,000.00 check, Caldarella was concerned MDC had received funds to which it was not entitled.

Despite what Caldarella apparently told the Trustee, Caldarella testified at trial that he believed MDC was entitled to both payments. Caldarella further testified, however, that he could not specifically recall what work was performed in connection with the $30,000.00 check. With regard to the $50,000.00 check, Caldarella testified that the check was issued to MDC by LGE at the insistence of NewAlliance Bank, a secured creditor of LGE, in exchange for Caldarella's exerting "influence" in "ensuring to the extent that [Caldarella] could" that LGE "complete the punch list" on the Pepperidge Farm job. Although Gherlone and Caldarella testified as to why the $30,000.00 and $50,000.00 checks were issued, no party presented evidence to establish that the checks were payments in the ordinary course of LGE's business.

Because all three elements of a Section 549 claim have been proven with regard to the $30,000.00 and $50,000.00 checks, judgment will enter in favor of the Plaintiff and against MDC declaring those two transfers avoidable as unauthorized postpetition transfers.

### 3. Liability of Transferee of an Avoided Transfer

If a transfer is avoided under Section 549, Section 550 provides the mechanism for recovery of that avoided transfer. *Enron Corp. v. Int'l Fin. Corp. (In re Enron Corp.)*, 343 B.R. 75, 81 (Bankr.S.D.N.Y.2006). Section 550 is intended "to restore the estate to the financial condition it would have enjoyed if the [avoided] transfer had not occurred." *Bruno Mach. Corp. v. Troy Die Cutting Co., LLC. (In re Bruno Mach. Corp.)*, 435 B.R. 819, 848 (Bankr. N.D.N.Y. 2010). Section 550, states in relevant part that:

> (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from-
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.
> (b) The trustee may not recover under section (a)(2) of this section from-
> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
> (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550 (2014). After the transfers are deemed avoidable under Section 549, a determination of whether MDC was an "initial transferee" of the avoidable transfers must be made. Once an entity has been identified as an initial transferee, "Section 550(a)(1) . . . subjects [it] . . . to strict liability." *Christy v. Alexander & Alexander (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 57 (2d Cir. 1997).

"The Code does not define the term 'initial transferee.' The majority of the circuits, including the Second Circuit, apply the 'dominion and control' test set forth in *Bonded Fin.*

*Servs. v. European Am. Bank*, 838 F.2d 890 (7th Cir.1988)." *In re Bruno Mach. Corp.*, 435 B.R. at 848 (citing, *inter alia*, to *Finley*, 130 F.3d 52, 57-58 (2d Cir. 1997)). In order to qualify as an "initial transferee," an entity "must be more than a 'mere conduit' that facilitates the transfer between the debtor and a third party." *Id.*, (citing *Finley*, 130 F.3d at 57-58). Instead, an initial transferee "must exercise dominion over the transferred assets, or have the right to use the assets for its own purposes." *Id.*

In the instant case, it is clear that MDC was the initial transferee of the $30,000.00 and $50,000.00 checks. As stated by the bankruptcy court in *Bruno*, 435 B.R. at 848, in this case MDC "received the challenged transfers directly from [LGE, and] . . . could use the checks . . . as it pleased. Therefore, [MDC] is strictly liable as an initial transferee of the assets." LGE's bankruptcy estate may therefore recover the transfers from MDC in the amounts of $30,000.00 and $50,000.00.

### IV. Conclusion

Based on the foregoing, it is hereby

ORDERED that on Count One of the Complaint, pursuant to 11 U.S.C. § 549, judgment is entered: (i) in favor of the Plaintiff and against the Defendant MDC in the amount of $80,000.00; and (ii) in favor of the Defendant Caldarella and against the Plaintiff; and it is further

ORDERED that on Count Two of the Complaint, pursuant to 11 U.S.C. § 550, judgment is entered in favor of the Plaintiff and against the Defendant MDC, and MDC shall turn over to the Plaintiff the sum of $80,000.00 for which it was found to be liable under Count One, plus interest thereon from the date of the filing of the Complaint (September 19, 2012), to the date of payment, at the rate established by 28 U.S.C. § 1961; and it is further

ORDERED that on Count Three of the Complaint, pursuant to 11 U.S.C. § 550, judgment is entered in favor of the Defendant Caldarella and against the Plaintiff.

By the Court,

Dated: December 19, 2014

*Julie A. Manning*
Julie A. Manning
Chief United States Bankruptcy Judge